**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHLEEN M. MALEY,** ) | Case No.  1:09 CV 896 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **EMH REGIONAL HEALTH CARE** ) | |
| **CENTER,** ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant EMH Regional Medical Center's Motion for Summary Judgment (*Doc #: 26*).  For the reasons discussed, *infra*, Defendant's motion is hereby **DENIED** as to Plaintiff's disability discrimination claim and **GRANTED** as to Plaintiff's retaliation claims.

**I. BACKGROUND**

Plaintiff Kathleen Maley was a radiological technologist at EMH Regional Medical Center from July 5, 1981 until her involuntary termination on April 19, 2007.  The reason given for Plaintiff's termination was sleeping on the job.  Prior to her termination, Plaintiff had received warnings or been disciplined on four separate occasions for allegedly sleeping while on duty.  All of these incidents occurred after Plaintiff had taken leave under the Family Medical Leave Act ("FMLA") due to migraine headaches and depression.

Plaintiff has brought causes of action pursuant to Ohio R.C. §4112.02(A) for

handicap or disability discrimination, R.C. §4112.02(I) for retaliation and 29 U.S.C. §2601 for FMLA retaliation. Plaintiff asserts that in each of the instances where she was allegedly sleeping on the job, she was actually resting her eyes to help treat her migraine headaches. She argues that Defendant did not provide her a reasonable accommodation for managing her disability and that the accusations of sleeping on the job and her subsequent termination were retaliation for her disability, her need for a reasonable accommodation and her taking FMLA leave.

Defendant has moved for summary judgment on the basis that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Specifically, Defendant argues that Plaintiff cannot establish a *prima facie* case of FMLA retaliation or disability discrimination and that its belief that Plaintiff was sleeping on the job provided a nondiscriminatory basis for terminating Plaintiff. Plaintiff has opposed the motion for summary judgment, arguing that genuine issues of material fact exist as to whether she was terminated due to her disability and/or in retaliation for taking FMLA leave. Defendant subsequently filed its reply brief.

## II. ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences drawn therefrom must be viewed in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997). If, after

reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.  DISABILITY DISCRIMINATION

R.C. §4112.02(A) states that it shall be an unlawful discriminatory practice "[f]or any employer, because of the ... disability ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  To establish a *prima facie* case of disability discrimination, Plaintiff must demonstrate: (1) she is disabled; (2) adverse employment action was taken by the employer, at least in part, due to Plaintiff's disability; and (3) though disabled, Plaintiff could safely and substantially perform the essential functions of the job in question.  *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998).

Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination.  Defendant asserts that if Plaintiff could continue to work and did not need to go home due to her migraine headaches and depression, these conditions were not a disability.  Moreover, even if the migraine headaches and depression constituted a disability, Plaintiff never requested, but still was granted, a suitable accommodation.

R.C. §4112.02(A) defines a disability as "a physical or mental impairment that substantially limits one or more major life activities, including the function of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

-3-

working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

Given the similarity between the Americans with Disabilities Act ("ADA") and Ohio disability discrimination law, Ohio courts look to interpretations of the ADA when deciding cases bringing federal and state disability discrimination claims. *See Columbus Civ. Serv. Comm.*, 697 N.E.2d at 206. An impairment is substantially limiting if it prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives and the impairment's impact is permanent or long term. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).[1] Courts should examine: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. §1630.2(j)(2)(i) - (iii). Temporary impairments, with little or no long-term impact are usually not disabilities. *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572, 582 (6th Cir. 2007) (citation omitted).

Plaintiff has demonstrated a genuine issue of material fact that she has a disability. The affidavit of her treating physician notes that her "conditions can be controlled but not cured," *Doc #: 28-2* at ¶7a, "that her life has been adversely affected for the last 6-7 years," *id.* at ¶7c, and that "[h]er daily activities would be rendered significantly impaired and at times she would be unable to drive, exercise, be up and around, or perform relatively simple work

---

[1]The ADA Amendments Act of 2008 specifically rejected *Williams*' high standard for demonstrating disability under the "substantially limits" test. 122 Stat. 3553. Nevertheless, because the effective date of the ADA Amendments Act is January 1, 2009, and the statute does not apply retroactively, the ADA Amendments Act does not apply to this case where the conduct at issue occurred from 2005-2007.

-4-

tasks, e.g. reading, walking, lifting, and bending." *Id*. at ¶7g.  Based on this information, a jury could conclude that she is substantially limited in performing one or more major life activities and that this impairment has had and will have a long-term impact.

Defendant attempts to argue that Plaintiff either does not have a disability because she claimed she could continue to work while having the migraines or if the migraines are a disability, by definition, she would not have been able to continue working.  In support of its argument, Defendant cites to *Combs v. Att'y Gen. of Ohio*, No. 2000-12068, 2002 WL 31966959 (Ohio Ct. Cl. July 29, 2002) and *Thomas v. Avon Products, Inc.*, No. 07-3924, 2008 WL 1987140 (6th Cir. May 8, 2008), two cases where plaintiffs suffering from migraines were determined not to be disabled because they could not present evidence that the condition substantially limited major life activities.  However, neither *Combs* or *Thomas* holds that migraines are not a disability or that a disability must preclude the ability to continue working.  Rather, these cases merely highlight that migraine headaches must substantially limit a major life activity, whether related to work or not, to be considered disabling.  The determination of whether migraines substantially limit a major life activity must be made on a case-by-case basis. *See Albertsons, Inc. v. Kirkinburg*, 527 U.S. 555, 566 (1999).  Here, Plaintiff has presented evidence from which a jury could conclude that her migraines meet this test.

Additionally, there is a genuine issue of material fact as to whether the adverse employment action taken by Defendant was due to Plaintiff's disability.  The adverse employment action was discipline and, ultimately, termination for allegedly sleeping on the job.  Defendant argues that because Plaintiff did not request an accommodation and because Plaintiff was nevertheless given a reasonable accommodation, it could not have violated R.C. §4112.02

when it disciplined Plaintiff for sleeping. Defendant contends that Plaintiff had an obligation to request a reasonable accommodation, and never did so. Thus, Defendant asserts it could not have been expected to know that by putting her head down and closing her eyes Plaintiff was accommodating her migraine headaches rather than sleeping. Moreover, Defendant argues that by offering to allow Plaintiff to go home on each occasion she was allegedly sleeping, it offered Plaintiff a reasonable accommodation for the migraine headaches.

Plaintiff disputes that she never asked for an accommodation for her migraine headaches. Plaintiff's affidavit states that she asked if she could close her eyes and "'get out of the light' for a few minutes" and was told that she could not. Doc #: 28-1 at ¶18. Plaintiff also notes that going home for the day rather than merely resting her eyes for a few minutes would result in unnecessarily having to use up FMLA and sick leave. *Id*. at ¶16. Furthermore, Plaintiff takes issue with being required to leave work for the day and therefore placing greater burden on her colleagues to help service patients.

Plaintiff's evidence and arguments based on this evidence are sufficient for a reasonable juror to infer that the adverse employment action taken by Defendant was due to her disability. That is, there is a dispute of material fact whether, by only providing the option of going home for the day when suffering from a migraine, Defendant offered Plaintiff a reasonable accommodation for her disability. The Sixth Circuit has held that, under R.C. §4112.02(A), an employer has taken an adverse action due to an employee's disability where it terminated a disabled worker who refused to show up to work because the employer failed to provide a reasonable accommodation. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008). While an employer need not provide the employee's choice of accommodation,

*Trepka v. The Bd. Of Educ. Of the Cleveland City Sch. Dist.*, No. 00-4063, 2002 WL 104801, at *3 (6th Cir. Jan. 24, 2002), ADA regulations state that "to determine the appropriate reasonable accommodation for a given employee, it may be necessary for the employer to initiate an informal, interactive process with the employee." *Talley*, 542 F.3d at 1110 (citing 29 C.F.R. 1630.2(o)(3)). This "interactive process is mandatory and both parties have a duty to participate in good faith." *Talley*, 542 F.3d at 1110 (citation omitted). However, it is the employee's responsibility to inform the employer of a need for an accommodation. *Combs*, 2002 WL 31966959, at *3 (citing 42 U.S.C. §12112(b)(5)(A)). Accordingly, there are material factual issues as to whether Plaintiff informed Defendant of her need for an accommodation, whether the parties attempted to confer to determine a mutually beneficial accommodation and whether the accommodation provided by Defendant was reasonable.

Moreover, while Defendant has presented a legitimate, nondiscriminatory reason for terminating Plaintiff - its belief that Plaintiff was sleeping on the job - Plaintiff's evidence that a reasonable accommodation was not provided could also enable the jury to conclude that the reason for termination was pretextual and that Plaintiff's disability was the actual reason. If unsatisfactory job performance leading to termination is caused by the lack of a reasonable accommodation for Plaintiff's disability, and Plaintiff can demonstrate that Defendant is responsible for the lack of such an accommodation, Defendant cannot then argue that Plaintiff's termination was due to poor job performance rather than her disability. The issues of reasonable accommodation and poor job performance are factually intertwined and it is the jury's role to determine those facts. Further, it is up to the jury to determine the adequacy of Defendant's investigation of the incidents that led to Plaintiff's termination and whether Defendant fairly

credited the statements of co-workers over Plaintiff's denials that she was sleeping. Accordingly, summary judgment must be denied.

### *B. RETALIATION*

R.C. §4112.02 (I) states that it is unlawful "for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Plaintiff must establish that: (1) she was engaged in a protected activity; (2) she was subject to adverse employment action; and (3) the adverse employment action was causally linked to the protected activity. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (Ohio Ct. App. 1984).

Similarly, under 29 U.S.C. §2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To make a *prima facie* showing of FMLA retaliation under this statute, Plaintiff must establish the same elements as required for a claim under R.C. 4112.02 (I). *See e.g. Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) ("A plaintiff must typically make a prima facie showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action"). In those situations where adverse employment action is based on both permissible and impermissible factors, once Plaintiff has made a *prima facie* showing, the burden shifts to Defendant "to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Hunter v.*

-8-

*Valley View Local Schools*, 579 F.3d 688, 692 (6th Cir. 2009) (citation omitted). That is, Defendant "must demonstrate evidence of a legitimate non-discriminatory reason for the adverse employment action." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If Defendant is able to establish this, the burden shifts back to Plaintiff to show that Defendant's "proffered reason is a pretext for unlawful discrimination." *Id.*

Defendant argues that there was no causal connection between Plaintiff's exercise of her FMLA rights and her termination. Defendant notes that each time Plaintiff returned from her FMLA leave she returned to the same job with the same responsibilities and pay. Defendant contends that there is no temporal proximity between the FMLA leave and Plaintiff's termination, and that even if there is, the facts show that there is no causal connection. Plaintiff was initially disciplined for sleeping on the job over a year after she was first certified for intermittent leave. Her third disciplinary action for sleeping occurred more than five months after Plaintiff had returned to work, at a time period when she did not have any FMLA leave available.

"[T]emporal proximity alone is insufficient to establish circumstantial evidence of a causal connection" and must be "coupled with other inidicia of retaliatory conduct" which may give rise to a finding of a causal connection. *Cutcher v. Kmart Corp.*, No. 09-1145, 2010 WL 346131, at *6 (6th Cir. Feb. 1, 2010). Thus, even if the adverse employment actions against Plaintiff occurred soon after Plaintiff's utilization of her FMLA leave, which is questionable in this case, Plaintiff cannot establish a causal connection because she has presented no other evidence of retaliatory conduct, or anything else that suggests a causal connection between her FMLA leave and her termination. The only evidence that can possibly be construed as

retaliatory is Plaintiff's testimony that upon return from FMLA leave she was required to work weekends, *Doc #: 32-1* at 233-34, and rotate through different departments, *id.* at 235-49, neither of which she was required to do prior to taking FMLA leave.  However, Plaintiff testified that "most" of her colleagues were also required to work weekends, *id.* at 232, and that she could only recall one person who was not required to rotate through departments.  *Id.* at 238-41. Because Plaintiff was essentially being treated the same as her colleagues, who did not take FMLA leave, a reasonable jury could not conclude that this was retaliation for taking FMLA leave.

Moreover, Plaintiff's evidence of disability discrimination is not sufficient to establish an FMLA retaliation claim.  Critically, Plaintiff offers no evidence that Defendant's refusal to provide a reasonable accommodation was connected in any way to her FMLA leave. Accordingly, Plaintiff has not put forth sufficient evidence to maintain claims for FMLA retaliation and/or R.C. §4112.02(I) retaliation, and summary judgment is therefore granted in favor of Defendant.

### III.  CONCLUSION

For the reasons discussed, *supra*, Defendant's Motion for Summary Judgment is hereby **DENIED IN PART AND GRANTED IN PART**.

**IT IS SO ORDERED.**

 */s/Dan Aaron Polster     March 11, 2010*
**Dan Aaron Polster**
**United States District Judge**